Judge Mills
delivered the Opinion of the Court.
[Absent Chief Justice Bibb.]
On the 30th of January, 1813, Adam Caldwell sold to Thomas White, a house and lot in the town of Frankfort, and received payment therefor, and White took possession of the estate. Upwards of three rears thereafter, Caldwell hating then heroine a non-resident of Kentucky, executed his bond to White, with Thomas Long as his surety, conditioned to convey the, said house and lot, by deed, with general warranty, ‘‘within eighteen months or two years from the date thereof,” and to keep White in peaceable possession of the estate. This instrument is dated the 26th of July, 1816. Some time after this, Caldwell departed this life, the precise time not certainly shewn.
On the 14th March, 1817, White still being in possession of the lot, sold the same to John Sebree, and gave his bond with surety, conditioned to convey the same on or before the first day of March, 1819 Sebree took possession — paid part of the price, and executed his notes for the residue, by instalments.
These bonds or notes for the purchase money, were assigned away by White, and Sebree was sued, and judgment had against him for the purchase money. The time when White was to make the conveyance having elapsed, Sebree demanded, his conveyance, and White having no title from Caldwell, Sebree filed his bill enjoining the pur *562 chase money, because he could get no title; and moreover, alleging that White not only had no title, but could not get or make a good title, according to his contract. He prays a conveyance or a rescission of the contract.
White’s answer making Caldwell’s and Sebree’s heirs defendants.
Decree in the case of Sebree against White, dissolving their contract.
White’s action of covenant against Long, as Caldwell’s surety, for the failure of Caldwell to convey.
On the 6th of March, 1821. While answered this bill, shewing his bond on Caldwell, and alleging Caldwell was dead, and that his heirs were infants, and non-residents; that he had found the title to Incomplete in Caldwell’s heirs, except a small triangle thereof, the title to which was conveyed, by the trustees, to Francis Ratcliffe; that Caldwell had purchased this triangle, of Ratcliffe, and received a writing, stipulating a conveyance. which writing was lost; that Ratcliffe was dead, and had numerous heirs, some infants, and others? femes covert. To his answer, he-made Caldwell’s heirs and Ratcliffe’s heirs defendants, and called upon them to answer the allegations of his answer; and that they might be compelled to convey to him; and that Sebree might be compelled to receive a conveyance from him, and complete his purchase.
White does not appear to have taken any steps to bring these new parties before the court, except getting a guardian ad litem appointed for the infant heirs of Ratcliffe, until Sebree brought the case to trial as between himself and White, and in the month of October, 1822, Sebree obtained a final decree rescinding the contract, compelling While to restore the purchase money which he had received, with interest, arid to take back the estate; Sebree accounting for the rents and profits thereof, during the term which he held it.
But before Sebree had obtained even an interlocutory decree against White for a rescission of the contract, White see.ms to have abandoned the idea of defending further, and of procuring the title for Sebree, and commenced his action at law upon She bond of Caldwell and Long, against Long, as the surety, for the value of the house and lot and made no further opposition to Sebres’s obtaining a decree of rescission.
Long and Caldwell’s bill for injunction against White’s proceeding at law, and to compel him to accept the title.
Answer of Ratcliffe’s heirs.
White’s answer resisting the specific performance prayed by Long and Caldwell.
Long and Caldwell’s heirs feeling the pressure of the action at law against Long, before Sebree had obtained his decree against White, appeared, filed their bill against White and Ratcliffe’s heirs; that the title was regularly vested in Caldwell, except the small triangle, which was vested in Ratcliffe, and had descended to his heirs; that for this fraction, there was a sale from Ratcliffe to Caldwell and a writing securing a conveyance, which was lost or mislaid: of which they offer proof; that so soon as this is obtained, there is no obstacle to making a dear title; and that the possession of the whole lot has remained with White undisturbed, from the date of his purchase from Caldwell, and no inconvenience in the enjoyment had been experienced from the want of title. And they prayed for and obtained an injunction against White, to restrain him from further proceeding in his action at law against Long, till the matter can be heard in equity.
Ratcliffe’s hears answered this bill, professing their ignorance of any sale or writing between their ancestors, of the. small triangular part of the lot, the title of which is in them by descent, and require the production of the writing, or proof of its existence and loss, before they are compelled to convey.
White answers, denying knowledge of any sale between Caldwell and Ratcliffe, for the triangle— resists the taking of any title, or his being competed specifically, to perform his contract; alleges the loss which he had met with in the sale to Sebree, by the rescission of the contract; and that Sebree had brought bis action at law against him for his failure to convey, and recovered the whole stipulated price; and by these suits, he had suffered much for the want of a title; and avers that the estate is greatly depreciated in value, so as to be now, not worth more hundreds of dollars than he gave thousands; and that, having, for the want of a title, lost, his sale to Sebree, for as much as he had given for the lot, if would be a great hardship upon him to ho compelled to receive the conveyance.
Answer of Caldwell’s heirs to White’s bill, for specific performance; admitting its allegations, agreeing to convey according to the prayer of the bill.
Amendment of Caldwell’s heirs, charging the combination between Long and White.
Caldwell’s heirs afterwards, finding the bill of White against them, annexed to his answer to Sebree’s bill, wherein he prays for a decree against them for the title, still depending am! never dismissed by him, although Sebree had long since got his final decree, dismissing (he controversy as to him; they immediately answered, and agree to convey according to ids prayer, arid this progresses onto trial jointly with the bill of Caldwell’s heirs; so that or a final hearing, White presented this singular attitude of being a complainant against Caldwell’s and Rafriiffe’s heirs, praying that they maybe compelled to convey to him and citing up the lost bond or writing from Ratcliffe to Caldwell; and at the same time, a defendant to a bill of Caldwell’s heirs, against him and Ratcliffe’s heirs, praying that be may be compelled to accept the title, and he resisting its acceptance with all his energies, and denying the existence of any citing between Ratcliffe and Caldwell for the triangular part.
Caldwell’s heirs also filed an amendment to their original bill, wherein they make Long a defendant, who is joint complainant with them in their original bill, and never dismissed therefrom, and charge Long and White with collusion and combination against their interest; that Long bad suffered White to take a judgment against him at law, and to issue execution thereon, and by virtue thereof, Long’s estate had be, n sold by a friendly arrangement between them, without any notice or advertisement whatever, and White had become the purchaser, and had agreed by writing, to convey it back to Long, after Long should have a reasonable time to seek his recourse against Caldwell’s estate, which was fully solvent, and procure from them the money to pay to White. They, however, wore fully set out this matter in their answer to White’s bill annexed to his answer to Sebree, and in turn make this answer a cross bill, with appropriate, interrogatories, and pray that this friendly arrangement between Long and White, may be cheeked; and that as far as they have gone therein their acts may be set aside.
White responded to this matter, admits there has *565 been no disturbance in the possession of the lot, and he discloses the writings entered into between him and Long, which he alleges contains all their agree merits, and alleged combination between them, and which he declares fair and righteous.
White’s answer to the amendment of Caldwell’s heirs.
Long’s answer.
Agreement between Long and White, and sale of Long’s property accordingly.
White’s judgment against Long, the injunction notwithstanding.0
This new matter, set up by Caldwell’s heirs, places Long also, in the attitude of both complainant and defendant, on each side of the same controversy, and he accordingly answers these charges.— He pleads his distressed situation as a security for Caldwell, and the utter ruin likely to overtake him by White’s judgment. He also alleges that all the arrangements between them are contained in the writings to which he refers. He, however, does not very earnestly resist the relief sought by Caldwell’s heirs, or any other relief that will relieve him from his dangerous dilemma, as security for Caldwell.
By the writings between White and Long, disclosed by their answers, it appears that the sheriff, within three or four days after the levy of White’s execution on his judgment against Long, sold the house and lot of Long, on which he resided, and White became the purchaser thereof, for the full amount of the execution, and the sheriff conveyed it to White, who immediately entered into an article with Long, in which Long stipulates to pursue with all due speed, his recourse on Caldwell’s estate for the same amount, and when he shall get a judgment, to assign it to White, to redeem his residence; or if he shall fail in his recourse against Caldwell’s estate, and shall pay up the demand within two years, White stipulates to release this estate to Long.
It is worthy of remark here, and is a circumstance which we may again have occasion to notice, that all these answers and writings do not explain how White got out from under the effect of the injunction of Long and Caldwell’s heirs, and was permitted to proceed to a judgment, unless it was by an arrangement with Long. Nor does any part of the record explain it. That injunction was all the while hanging over him, and no dissolution *566 thereof appears, although White once moved for its dissolution, and the court gave no answer to the motion.
Decree of the circuit court dissolving the contract between Caldwell and White.
Decree against Ratcliffe’s heirs for a conveyance of part of the lot approved.
Subject of the diliquidations dismissed for want of proof.
In this situation these two causes came to a final hearing together. The court below supposing the equity of Caldwell’s heirs against Ratcliffe’s heirs, for the triangular portion of the lot established, gave to Caldwell’s heirs a derive for a conveyance, as to Rafcliffe’s heirs; but dismissed heir bill as to White and Long, and refused to enforce the contract or to interfere in the arrangements between White and Long; and also decreed a rescission of the contract between White and Caldwell, causing White to account for the rents and profits. From this decree, Caldwell’s representatives leave, appealed.
We concur with that court in supposing that Caldwell’s heirs have made out a valid claim in equity for the triangular piece of ground, against, the heirs of Ratcliffe. The proof is clear that Ratcliffe gave a writing acknowledging a sale of the ground, and a receipt of the purchase money. That writing appears to have been placed in the hands of counsel to bring suit against the heirs of Ratcliffe, as they were minors, and f bat counsel died never having Commenced the suit, and among his papers this writing could not be found. This testimony added to the fact that the house, or building covers the triangule, and became necessary to the, lot, for the purpose of squaring the house, to the front of the street and other buildings; and that this house was erected in the, life time of Ratcliffe, and was occupied with his acquiescence many years before his death, is adequate, to support, a decree against the heirs of Ratcliffe, and give Caldwell’s representative a complete title at this time, and the want of title now can not avail White, unless the previous want of if, may operate in his favor, of which we shall hereafter speak.
It is alleged by White that the estate has greatly depreciated in value, and therefore, he ought not to be compelled to fake it. On the other hand it is charged that White had greatly injured the estate *567 by alterations and changes. Of these charges there is no sufficient testimony on either side, and they may be dismissed from the controversy.
It is the general rule in executory contracts for land, the chancellor will not prohibit either part from his remedy at law.
It is one exception to the rule, when the vendee first appeals to court for specific performance.
W. having purchased of C. and sold to S. by executor contract, in his answer to the bill of S. for rescission, resisted and inserted a cross bill against C. and R one of C’s vendors, for a part, praying the execution of the contract against them, but took no process against his defendants——Afterwards S. obtains a decree for a rescission, nothing said of the cross bill. W. sues at law for damages against C’s surety, and C. brings his bill against W. for specific performance; W. then resists, and afterwards C. answers W’s cross bill—ruled that W. shall not be prejudiced by his old cross bill.
*567 Caldwell’s representatives appear in this trial not to have been able to make a conveyance, heretofore, for want of a conveyance, to this triangle. White seems to stand surrounded with a number of circumstances which must be weighed in deciding whether he. must or must not specifically perform his contract, after, by a resort to his remedy at law, be has procured a judgment, the amount of which he has secured by his friendly arrangement with Long. On the breach of the contract to convey on the part of Caldwell, White had a legal right to his action at law, and this legal right the chancellor will not control or take away, unless the party holding it can not, in conscience, retain it. The power of the chancellor to enforce specific performance, is one exercised, not on every occasion, but is guided by a legal discretion, and it does not belong as of right, to every meritorious contract, it may be, and is often withheld, even where there is merit, and the par the are left to their remedies at law, and it would seem to follow, that where the party who held and was using a legal remedy, ought not to be restrained from doing so unless this extraordinary interposition of the chancellor becomes necessary to prevent iniquity. It may, therefore, be assumed a general rule, that a chancellor will not interfere in such cases as this of contracts for the sale of lands, and a breach of the contract for conveyance, and proceeding at law thereon, unless there are some circumstances calculated to make the case an exception to the general rule.
Among the exceptions, (for exceptions there are,) the case of the same party having made his election first to apply to a court of equity for a specific performance, and then going to a court of law, is one which it is insisted operates to the prejudice of White.
It is true he appears first in a court of equity, seeking redress; but he can not be said to be a volunteer there, in pursuance of a free choice. He *568 was there impleaded by Sebree because lie had not made a title in pursuance of his contract; which he was unable to do, because Caldwell bad failed in his. As a means of defence there, he called upon the heirs of Ratcliffe and Caldwell; this was, however, but a formal call; he named them as parties, and asked relief; but he took no steps against them, to make them substantial parties, by bringing them before the court, nor can we say that he was bound to do so We are satisfied that Sebree was not bound to bring them there, and could only be compelled to look to White, for his title, and was not to travel the round from White to Caldwell’s heirs, and from thence to Ratcliffe’s heirs for a complete title. Nor can we say that White was bound to do so in defence, and if he did. he must shew strong and sufficient reasons, to detain Sebree from pursuing his course, until he litigated the matter with Caldwell’s and Ratcliffe’s heirs, before he could postpone the trial of Sebree’s bill. He does not appear to have had these reasons, or any reason, except the failure of Caldwell. He had sold before Caldwell was bound to convey to him, and he bad postponed the hour of bis performance nearly eight months after Caldwell was to convey to him. in that time he might reasonably expect a compliance on the part of Caldwell, and be met with none. Whether this failure was in any degree attributable to the death of Caldwell is not certain, for the time of his death is not proved. Rut one thing is certain, Caldwell had sold to White three years before this bond was given. Whether there were any writings between him and White for that period, does not appear. It is, however obvious, that during this time, he did not convey, owing to bis failure to procure the title from Ratcliffe’s heirs, by reason of the descent to them on the death of Ratcliffe, which occurred in 1814. At the end of the three years White pressed him for a title, and this bond was then given, fixing the period of making the title at the end of two years, no doubt for the purpose of procuring the title from Ratcliffe’s heirs. Why this was not done in that time is not shewn; nor is any valid excuse pretended for the delay. The death of counsel and *569 loss of paper, does not seem to have happened till some time afterwards. Caldwell or his heirs could not convey till the title to this triangle, including part of the building was, obtained. White, fore, could shew no sufficient reasons to protract the suit of Sebree, till the controversy with Caldwell’s and Ratcliffe’s heirs was settled; and he ought, therefore, to he excused for not having attempted it. His bill against. Caldwell’s and Ratcliffe’s heirs, attached to his answer to Sebree’s bill, be was not bound to continue and did not pursue. And at the time if was answered by Caldwell’s heirs was in operative, and a mere blank, receiving all its force from the voluntary answer of Caldwell’s heirs, also made a cross bill, in reply to which he holds very different language from has first employed in his answer, it might, at any time, have been dismissed by his counsel, and not dismissing it may shew unskilful management; but his acts before the answer of Caldwell’s heirs, in suing on his bond at Jaw. and in rejecting, in his reply, any obligatory effect of this first hill upon his interests, shew that he had abandoned, and virtually dismissed it long before. The circumstance then, of the singular predicament in which he stands, as complainant or party to both sides of the controversy, can not be allowed to have a material hearing upon his interest.
It is the generate rule, that hearing, the chancellor will regard everything done in disobedience to his injunction as not done.
But if it appears there was no ground for the injunction, acts done against it ad interim, will not be disturbed.
The fact of the injunction of Caldwell’s heirs and Long, hanging over him during the time he was proceeding at law, even to this trial, is the next thing to be considered. It is true, the chancellor will generally consider every thing done in disobedience to its injunction on the hearing, as not done at all, or will undo it if necessary, to give the relief necessary.
But on this hearing it is necessary for the party to shew that he had a clear equity, or in other words, that the ground for an injunction, when granted, was tenable. If this is not shewn, the chancellor will not disturb acts done ad interim, which has not prejudiced the party complaining.
This, as we have seen, Caldwell’s heirs have failed to do. Before that injunction White, who had *570 made a bonafide and advantageous sale to Sebree, had found to his cost, and the delay of the price, the situation in which he was placed by the failure of The consequences of a rescission of his ow n contract, was impending over him without any valid reasons for delaying it, or the means of avoiding it. He had waited a reasonable time tor a compliance, and had by his sale to Sebree, and his resistance to Sebree’s bill, shewed a willingness to waive the lapse of time, after Caldwell’s contract was broken. Under these circumstances, to save himself, he elected his remedy at law, and resorted to it. Any thing, therefore, which he has done in disobedience to the injunction, has been of no prejudice to the heirs of Caldwell, and Long does not complain of it.
Proceedings, notwithstanding an injunction, not disapproved.
Specific performance, after great delay, and the sale of vendee had been rescinded for want of the title, refused.
Where the vendee rescinds the contract, he shall account for the rents from the date of his purchase.
White, therefore, must stand excused for not standing to his contract. He has been a considerable sufferer by the failure of Caldwell. He had to restore the purchase money which he had gotten from Sebree, with interest. The notes of Sebree which he had assigned away, fell back upon him, with their accumulated weight of interest and costs, and he only received the rents from Sebree. He must, therefore, be permitted to hold his legal advantage, and any securities which he has obtained from Long.
But the court, on directing the account of rents on the restoration of the estate, has committed a material error, which must ho corrected. White is directed only to account for the rents from the time that he made his election to proceed affirmed by bringing bis suit We perceive no principle on which White can be excused from the entire rents of the estate, from the time he took possession of it, till it is restored. If he elected to proceed at law and rescind the contract, he must make that choice cum onore.
The decree must, therefore, be reversed with costs, as to White, and the cause he rewarded for a decree and proceedings, not inconsistent with this opinion.